BROOKS REALTY, INC. v. AETNA INSURANCE COMPANY
AND OTHERS.
BROOKS UPHOLSTERING COMPANY, INC. v.
AGRICULTURAL INSURANCE COMPANY AND OTHERS.
AETNA INSURANCE COMPANY AND OTHERS v. BROOKS
UPHOLSTERING COMPANY, INC.

128 N. W. (2d) 151.

April 24, 1964—No. 39,330.

*Dorsey, Owen, Marquart, Windhorst & West, Henry E. Halladay,
John D. Levine,* and *Clausen, Hirsh, Miller & Gorman,* for relators.
*Robins, Davis & Lyons, Solly Robins,* and *Sidney S. Feinberg,* for respondent.

ROGOSHESKE, JUSTICE.

Petition for a writ of prohibition directing the District Court of
Hennepin County, Fourth Judicial District, and the Honorable Stanley
D. Kane, one of the judges thereof, to refrain from proceeding with the
trial of pending actions to recover for losses by fire as contemplated by
pretrial orders which relators claim improperly limit the issues raised
by the pleadings.

The question presented is whether the trial court erred in limiting the
issues by holding that the insurance companies in three pending actions

were estopped from relitigating the defenses of arson and increase of risk of loss. The trial court based its order upon the ground that the parties to the pending actions were bound by a verdict returned in a prior trial involving the same fire and the same issues, although not identical parties.

The undisputed facts essential to our consideration follow. On February 17, 1962, a building and its contents were substantially destroyed by fire. The building, owned by Brooks Realty, Inc. (hereinafter Realty), was occupied under lease by Brooks Upholstering Company, Inc. (hereinafter Upholstering). The contents owned by Upholstering consisted of equipment and supplies used in conducting a furniture manufacturing business. The risk of loss or damage by fire to the building and the contents and for the interruption of business then being carried on by Upholstering was covered by insurance. Thirty separate policies issued by 15 different insurance companies, all sold by one insurance agent, were in force at the time of the fire. Eight of such policies, issued by 8 different companies to Realty, covered the building, affording protection to a maximum of $250,000. Eleven of such policies covered the contents, and the remaining 11 policies protected against an interruption of Upholstering's business due to fire. The latter 22 policies were issued by 5 of the insurance companies which also afforded protection to the building and by 7 different companies which did not cover that risk. Only 3 companies afforded fire insurance protection to the building alone with no overlapping coverage. Proofs of loss for the building, contents, and business interruption were duly filed and rejected by all insurance companies.

Subsequently, three actions to recover for the damage to the building, to the contents, and for interruption of the business were instituted. Answers by the respective companies were interposed. Each answer alleged, among other things, the defenses of arson and increase of risk of loss. The latter defense was based upon the claim that the sprinkler system was intentionally or negligently rendered inoperable by agents of the insureds. In the Realty case for recovery of damage to the building, the answer alleged both defenses and also that Realty had conspired with Upholstering to intentionally burn the building and to

increase the risk of loss. Also in that case, a third-party subrogation action against Upholstering was added upon the claim that if the insurance companies were found liable in the Realty case they had a right of indemnity against Upholstering for intentionally setting the fire and increasing the risk of loss.

Ultimately, after extensive preliminary proceedings which we deem it unnecessary to set out, all three actions appeared on the calendar for trial before the Hennepin County District Court. Thereupon, by arrangement of the insurance companies, common counsel undertook to represent them at trial. Before the cases were set for trial, all of the insurance companies joined in a motion to consolidate the actions for trial. This motion was opposed by counsel representing both Realty and Upholstering and was denied. The Realty case was ordered to be tried first, followed immediately by separate trials of the contents, business interruption, and third-party subrogation cases in the order directed by the judge trying the Realty case. The Realty trial lasted for 12 trial days and the transcript, which is neither printed nor settled, contains over 1,900 pages. The trial resulted in a general verdict for Realty, awarding $122,600 for damage to the building. The jury also answered special interrogatories as follows:

No. 1. "Did the plaintiff intentionally set the fire? No."

No. 2. "Did the plaintiff intentionally increase the risk of loss by fire? No."

No. 3. "Was the building a total loss? No."

No. 4. "If the answer to question number 3 is 'no', did the plaintiff's damages from the partial loss exceed $250,000.00? No."

On the day following the receipt of the verdict, a pretrial conference was begun concerning the trial of the contents case that was to commence upon completion of the conference. The eight insurance companies named as defendants in the Realty case had filed a motion for judgment notwithstanding the verdict or in the alternative for a new trial. At the conclusion of the conference, which was adjourned from time to time, the court filed a pretrial order, ruling that the jury verdict in the Realty case on the issues of arson and increase of risk was binding on all parties in the remaining cases. The court stayed commence-

ment of the trials of the remaining cases to permit the defendant insurance companies to apply for relief to this court. Following such application and a hearing accorded to counsel for all of the parties, we issued the alternative writ of prohibition now before us. The return to the writ raises the issue of whether it was error to apply the rule of estoppel by verdict, thereby preventing the defenses of arson and increase of risk of loss from being relitigated in the remaining cases.

Mindful of the restraint which should be exercised in interfering with trial orders of the type presented, we are constrained to hold under the circumstances that it was error to conclude that the verdict in the Realty case was binding upon the parties in the remaining cases, and to therefore order that proof in the remaining cases be limited to the issues raised by the pleadings "exclusive of the issues of arson and of increase of risk of loss."

1. Under the doctrine of res judicata, it is well recognized that parties to an action may be estopped from relitigating issues in a subsequent action that were raised and determined in a prior action.[1] Apart from the general requirements regarding identity of parties and the finality of the adjudication, application of the rule of estoppel by verdict requires the party asserting it to establish that the precise question was in fact presented and necessarily determined by the verdict in the former trial.[2] As stated in Wolfson v. Northern States Management Co. 221 Minn. 474, 479, 22 N. W. (2d) 545, 548:

"* * * The defense of *res judicata* through estoppel by verdict is to be allowed with caution, and it must rest upon a more solid basis than mere speculation as to what was actually adjudicated in the prior action. * * *

"Estoppel by verdict does not apply to issues of fact raised in a former action if the jury therein could have rendered its verdict without

[1]Leonard v. Schall, 132 Minn. 446, 157 N. W. 723, 4 A. L. R. 1166; Wolfson v. Northern States Management Co. 221 Minn. 474, 22 N. W. (2d) 545. See, generally, 65 Harv. L. Rev. 818.

[2]Irish American Bank v. Ludlum, 56 Minn. 317, 57 N. W. 927; Neilson v. Pennsylvania Coal & Oil Co. 78 Minn. 113, 80 N. W. 859; Restatement, Judgements, § 68, *comment c*; 52 Col. L. Rev. 647, 658.

deciding such issues. Stothard v. Shanley, 166 Minn. 134, 207 N. W. 198. There can be no estoppel where there is a reasonable doubt as to whether a fact was actually adjudicated. * * * Defendant, in its attempt to invoke the defense of estoppel by verdict, has not sustained the burden of proof."

Viewing the jury's verdict in the light of the court's instructions alone, it appears that the claim that Upholstering was solely responsible for intentionally setting the fire and increasing the risk of loss was neither presented nor determined in the Realty case. After the court had informed the jury of the defenses asserted and defined the terms used, it instructed as follows:

"* * * If you find that the fire was intentionally set by the plaintiff, the owner of the building, Brooks Realty, acting through its officers or principal agents, or as a result of a conspiracy with the Brooks Upholstering Company, the tenant, acting through its officers or principal agents, then the plaintiff cannot recover in this case. In order for the insurance companies to prevail on this defense, they have the burden of proving: First, that the fire was intentionally set; but that, in and of itself, does not constitute a defense; nor does it mean, in and of itself, that the plaintiff set the fire, caused it to be set, or conspired with Brooks Upholstering to set it or cause it to be set. That is a matter of proof. Even if you were to find that this fire was of incendiary origin, that is, if it was set, that standing alone is not sufficient to support a finding for the defendants. Defendants must show, not only that the fire was set, but that the plaintiff was intentionally responsible for its setting. In other words, even though you find arson you must also find that there is sufficient evidence connecting the plaintiff with the arson. * * * If you should find that the insured plaintiff corporation intentionally so altered the situation or circumstances as to increase the risk of loss by fire, or if you find that such situations or circumstances were altered by persons acting as agents of Brooks Upholstering Company, with the knowledge, control, or consent, or approval of the plaintiff corporation, Brooks Realty, then the increase of risk provision of the policies is applicable, and your verdict should be in favor of the defendants."

Reading the charge as a whole, we find no justification to conclude that the verdict exonerated Upholstering from being solely responsible for setting the fire or increasing the risk of loss. In reaching this conclusion we need not resort to an examination of the evidence. However, the conclusion is given additional support from the general agreement between the parties that the separate identity of the corporations was maintained during the trial and in the charge; that the evidence tended to show that Upholstering was in financial distress at the time of the fire; that Realty had no such problem; and that the insurance companies, in their effort to establish the defenses asserted, relied greatly upon the conduct and actions of an employee of Upholstering. It seems inescapable, therefore, that the jury's determination amounted to no more than a finding that either no arson or increase of risk of loss was established at all, or that, if such was established, Realty was not to be charged with responsibility because its officers and agents neither participated directly nor indirectly in any conduct giving rise to the defenses alleged. As there appears to be no basis to doubt that the jury was precluded by the charge from passing upon the defenses raised in the pending actions, it was an error of law to apply the rule of estoppel by verdict.

2. No purpose would be served in analyzing relators' further contentions that the parties to the pending actions are neither the same nor in privity with the parties in the Realty case, or that the verdict has not passed into judgment, and, therefore, if either is not established estoppel cannot be applied. Suffice it to note that, even though entry of judgment may not be necessary to apply the rule, it is generally required that the decision in the prior action must at least be a final decision of the trial court.[3] The return to the writ reveals that the court has not yet filed a decision denying the post-trial motions of either the defendants or plaintiff which were presented and fully submitted following the verdict in the Realty case. Although the court's return to the writ indicates an intention to deny the defendants' motions, a reviewing court cannot be expected to regard such a declaration as tantamount to the finality of a formal decision on the motions and an order for the entry of judgment.

---

[3]Miller v. Simons, 239 Minn. 523, 59 N. W. (2d) 837.

3. Respondent vigorously and properly contends that the court should not use this extraordinary writ to grant piecemeal review of actions pending trial in the district court.[4] We acknowledge our reluctance to exercise this discretionary authority in any case where we do not feel compelled to act. However, we have previously declared that the writ will lie where it appears that the court has exercised, or is attempting to exercise, power unauthorized by law, and if not restrained, waste of time, expense, and effort will likely result.[5] This is such a case. The vice in our refusal to pass upon the question presented is that the pretrial decision here challenged would, in the normal course, only reach us upon an appeal following a trial of the remaining cases. It would not be consistent with the proper administration of justice for us to wait to correct the error of law committed herein upon multiple appeals from the trials of the remaining cases. Such relief could hardly be regarded as affording to relators an adequate remedy.[6]

Because defendants in the Realty case indicate a present intention to appeal from an anticipated denial of their post-trial motions, respondent argues that even though a new trial may be granted upon appeal, the issues thereupon could be retried without disturbing the results of the trials in the remaining cases during the interim. Such argument overlooks three vital matters. First, the question presented in this proceeding will not be presented in the Realty appeal. Second, the issues of arson and increase of risk of loss could not be retried in that case with any greater effect upon the contents, business interruption, and subrogation cases unless the parties so stipulated or the court, upon motion or its own initiative under Rule 42, Rules of Civil Procedure, ordered a separate trial of the issues common to all cases. Third, al-

---

[4]See, Wright, *The Doubtful Omniscience of Appellate Courts*, 41 Minn. L. Rev. 751, 776.

[5]State ex rel. Hierl v. District Court, 237 Minn. 456, 54 N. W. (2d) 5. See, Boldt v. Sanders, 261 Minn. 160, 111 N. W. (2d) 225; Jeppesen v. Swanson, 243 Minn. 547, 68 N. W. (2d) 649. See, also, Brown v. St. Paul City Ry. Co. 241 Minn. 15, 28 to 32, 62 N. W. (2d) 688, 697 to 699, 44 A. L. R. (2d) 535.

[6]Smith v. Tuman, 262 Minn. 149, 114 N. W. (2d) 73; State ex rel. Stenstrom v. Wilson, 234 Minn. 570, 48 N. W. (2d) 513.

though respondent cannot understandably face the possibility that a re-trial of the Realty case could result in a verdict favorable to the insurance companies on the issues in question, if such did occur, the time, expense, and effort in partially trying the pending cases during the interim would be completely and unjustifiably wasted.

We conclude that we have no choice but to order that the writ be made absolute, with costs and disbursements to relators.